*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARGARET PASQUA and KIMBERLY BROWNE, | : : : | |
| Plaintiffs, | : : | Civ. Action No.: 14-4203 (FLW) (TJB) |
| v. | : : | **OPINION** |
| THE COUNTY OF HUNTERDON and HUNTERDON COUNTY BOARD OF CHOSEN FREEHOLDERS, | : : : : | |
| Defendants. | : | |
| MARGARET PASQUA and KIMBERLY BROWNE, | : : : | |
| Plaintiffs, | : : | Civ. Action No.: 15-3501 (FLW) (TJB) |
| v. | : : | |
| THE COUNTY OF HUNTERDON, *et al.*, | : : | |
| Defendants. | : | |

## WOLFSON, District Judge:

Plaintiff Margaret Pasqua formerly held the position of Chief Financial Officer/Treasurer at the County of Hunterdon ("the County"), and Plaintiff Kimberly Browne (collectively, "Plaintiffs") was an at-will employee who served as the Director of Finance. The County terminated both Plaintiffs on December 30, 2013, for, *inter alia*, allegedly authorizing improper payments of medical benefits and failing to maintain accurate financial records. Plaintiffs brought two separate lawsuits in state court challenging their terminations, which cases were later removed to this Court based on federal question jurisdiction. In Civil Action No. 14-4203 ("*Pasqua I*"),

1

Plaintiffs claim that the Hunterdon County Board of Chosen Freeholders (the "Board") decided to terminate them without just cause, and that they are entitled to a *de novo* review of that decision pursuant to N.J.S.A. 40A:9-25. Furthermore, Plaintiffs accuse the County and the Board (collectively, "County Defendants"), for allegedly terminating them for political reasons, and for holding Plaintiffs' termination hearing in a manner that violated Plaintiffs' due process rights.

In Civil Action No. 15-3501 ("*Pasqua II*"), Plaintiffs assert against the County Defendants substantially similar, if not identical and duplicative, state and federal claims arising from the same allegedly wrongful terminations. Plaintiffs also assert those same claims against other individual county employees and officers: Cynthia J. Yard, George B. Melick, William G. Mennen, Robert G. Walton, J. Matthew Holt, John King, John E. Lanza, Suzanne Lagay, and Edward J. Florio (collectively, the "Individual Defendants").[1] In addition to these defendants, Plaintiffs bring state professional malpractice and tort claims against the following accounting firms and accountants: Donohue Gironda & Doria, Louis J. Garbaccio, Frederic J. Tomkins ("Donohue Firm"), Samuel Klein & Co., Michael McGuire ("Samuel Firm"), Wiss & Co., LLP and David J. Gannon ("Wiss Firm") (collectively, "Accountant Defendants"). With regard to these particular defendants, Plaintiffs allege that their audits led and contributed to Plaintiffs' terminations.

In *Pasqua I*, Plaintiffs move for summary judgment as to all claims and the County Defendants cross-move for summary judgement on the same claims. Additionally, the County Defendants request that the Court strike, as violative of L. Civ. R. 7.2(a) and Fed. R. Civ. P. 56(c), Plaintiffs' certifications, submitted in support of their Motion for Summary Judgment. Pending in

---

[1]       Neither the County Defendants, nor the Individual Defendants in *Pasqua II*, have moved to dismiss Plaintiffs' claims, presumably because these defendants are awaiting this Court's decision on the parties' Cross-Motions for Summary Judgment in *Pasqua I*.

*Pasqua II* are separate Motions to Dismiss filed by each of the accounting firms. Because the subject matter and factual background in both cases are substantially similar, all of the motions will be resolved in this Omnibus Opinion.

For the reasons set forth below, in *Pasqua I*, Plaintiffs' Motion for Summary Judgment is **DENIED**, and the County Defendants' Cross-Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. State and federal claims asserted in Counts Two through Seven against the County Defendants are dismissed. Both Motions for Summary Judgment on Count One, Plaintiff Pasqua's state statutory claim under N.J.S.A. 40A:9-25, are **DENIED** without prejudice; the Court declines to exercise supplemental jurisdiction on that claim. As such, Civil Action No.: 14-4203 shall be remanded to the state court.[2] In *Pasqua II*, the Accountant Defendants' Motions to Dismiss are **GRANTED** in their entirety. Further, Plaintiffs shall show cause within 15 days from the date of the Order accompanying this Opinion as to why the federal claims asserted in *Pasqua II* should not be dismissed based on this Court's decision in Civ. Action No. 14-4203.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.   *Pasqua I*

Because the Court is considering the facts of *Pasqua I* in the context of cross-motions for summary judgment, the Court views the facts in the light most favorable to the non-moving party in the context of each motion. The following facts are not in dispute unless otherwise noted.

---

[2]       As will be discussed, *infra*, while Counts Two through Four are state law based claims, the Court finds it appropriate to adjudicate them here.

Plaintiffs are former employees of the County. Pls.' Rule 56.1 Statement of Material Facts not in Dispute ("Pls.' Statement") ¶ 1; Defs.' Resp. to Pls.' Statement of Material Facts ("Defs.' Resp. Statement") ¶ 1. In May 2008, Ms. Pasqua was appointed to the positions of County Chief Financial Officer and Treasurer, and served in these positions until her termination on December 30, 2013.[3] Ms. Browne was employed in the position of Director of Finance in May 2008, and served in this position until she was terminated on December 30, 2013.[4] Pls.' Statement at ¶ 3; Defs.' Resp. Statement at ¶ 3.

According to the County Defendants, as part of Plaintiffs' job duties, they were responsible for the accuracy and completeness of the County's financial records and statements. Defs.' Supplemental Statement of Material Facts in Supp. of Cross-Mot. for Summ. J. ("Defs.' Suppl. Statement") ¶¶ 4-5, 7-9, 12-13, 16-19, 21, 25-28; *but see* Rule 56.1 Pls.' Resp. to Defs.' Statement of Material Facts not in Dispute ("Pls.' Resp. Statement") at corresponding paragraphs. However, in 2013, the County Defendants conducted an investigation and audits of the County's financial records that purportedly revealed that for years, numerous aspects of the County's finances were misstated and misrepresented with negative financial consequences to the County. Defs.' Suppl. Statement ¶¶ 6, 29-30, 35, 39, 44, 45, 53-55, 58-59, 62, 71-72, 74, 78, 86, 98, 105; Pls.' Resp. Statement at corresponding paragraphs. The County Defendants claim that Plaintiffs were responsible for these errors and that when Plaintiffs were confronted such evidence, "they resisted

---

[3]    Plaintiffs claim, and the County Defendants appear to dispute, that prior to her appointment as Chief Financial Officer and Treasurer, Ms. Pasqua had been employed by the County in different capacities since January 1989. *See* Pls.' Statement at ¶ 2; Defs.' Resp. Statement at ¶ 2.

[4]    Plaintiffs claim, and the County Defendants appear to dispute, that prior to her appointment as Director of Finance, Ms. Browne had been employed by the County in a different capacity since November 2002. *See* Pls.' Statement at ¶ 3; Defs.' Resp. Statement at ¶ 3.

the auditors' and the County's efforts to redress these issues and refused to fully cooperate to the point of insubordination." Defs.' Br. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Defs.' Cross-Mot. for Summ. J. and to Strike Pls.' Certs. ("Defs.' Br.") 1-2; *see* County. Defs.' Suppl. Statement ¶¶ 123-34; Pls.' Resp. Statement at corresponding paragraphs.

Plaintiffs maintain that, contrary to the County Defendants' assertions, many of the errors in the County's financial records originated from failures by the County's human resources department to perform its designated responsibilities. County. Pls.' Statement at ¶¶ 11-12, 15; Defs.' Resp. Statement at corresponding paragraphs. Furthermore, Plaintiffs claim that a number of the errors already appeared in the County's financial books in May 2008, when Plaintiffs were appointed to their respective positions in finance department. Pls.' Statement at ¶¶ 16-17; Defs.' Resp. Statement at corresponding paragraphs. Consequently, Plaintiffs take the position that they are not responsible for audit issues detected in the County's financial records.

On September 24, 2013, both Plaintiffs were served by the County Administrator, Cynthia J. Yard, with the following formal disciplinary charges:

> (1) Neglect of Duty
> (2) Serious mistake due to carelessness where an there is a financial loss to the County
> (3) Failure to complete regular report
> (4) Incompetency of inability to perform assigned duties
> (5) Insubordination
> (6) Conduct Unbecoming a Public Employee
> (7) Violation of a rule, regulation, policy, procedure, order or administrative decision where there is a financial loss to the County
> (8) Other sufficient cause

Pls.' Statement at ¶ 4 (numbering added); Defs.' Resp. Statement at ¶ 4. The County scheduled the first hearing on both Plaintiffs' charges for the same day. Pls.' Statement at ¶ 7; Defs.' Resp. Statement at ¶ 7. Before the commencement of the hearing, both Plaintiffs, through their shared

attorney, argued that each was entitled to a separate hearing on the ground that the charges against them were not the same (although they involved similar circumstances). Pls.' Statement at ¶ 7; Defs.' Resp. Statement at ¶ 7. Plaintiffs asserted that a joint hearing was inappropriate, because they would be unable to "guess or surmise whether the testimony about a performance concern was directed against them or the other employee." Pls.' Statement ¶ 7; Defs.' Resp. Statement ¶ 7. The County opposed Plaintiffs' request for separate hearings, and the Hearing Officer proceeded to conduct all nine days of Plaintiffs' hearings jointly. Pls.' Statement at ¶¶ 7-8; Defs.' Resp. Statement at corresponding paragraphs.

During the nine days of hearings, both sides presented testimony and documentary evidence. Pls.' Statement at ¶¶ 8, 22; Defs.' Resp. Statement at corresponding paragraphs. Plaintiffs were represented by counsel – indeed the same attorney – and were permitted to cross-examine witnesses. *See* Hearing Transcripts (Dkt. Nos. 22.9-22.16). On December 27, 2013, the Hearing Officer issued a Preliminary Report, in which he recommended that Plaintiffs be terminated based on the asserted charges. Pls.' Statement at ¶¶ 21-22; Defs.' Resp. Statement at corresponding paragraphs; *see also* Hearing Officer's Prelim. Report (Dkt. No. 22.7). Plaintiffs assert that this Preliminary Report "failed to provide a rationale for [the Hearing Officer's] yet to be issued future recommendation, nor did it include adequate findings of fact nor did it provide an expression of reasoning which, when applied to the found facts, resulted in the recommended decision." Pls.' Br. in Supp. of Summ. J. Mot. ("Pls.' Supp. Br.") 2. Eventually, on May 16, 2014, but several months after Plaintiffs had been terminated, the Hearing Officer issued his Final Report. Pls.' Statement ¶ 24; Defs.' Resp. Statement ¶ 24.

On December 30, 2013, after the issuance of the Hearing Officer's Preliminary Report, but before the issuance of the Final Report, the Board unanimously voted to terminate Plaintiffs from

6

their positions. Pls.' Statement ¶ 23; Defs.' Resp. Statement ¶ 23; Cert. in Counsel in Supp. of Pls.' Summ. J. Mot. ("De Sapio Cert") Attach. B 1. At the time, the Board was comprised of five Freeholders: George B. Melick, William G. Mennen, Robert G. Walton, J. Matthew Holt, and John King. De Sapio Cert Attach. B 1. However, only Mr. Melick, Mr. Walton, Mr. Holt, and Mr. King voted to terminate Plaintiffs, because Mr. Mennen was absent from the meeting. *Id*. Plaintiffs contend that the Board discharged them based upon the Hearing Officer's allegedly inadequate Preliminary Report, while the County Defendants claim that the Board decided to remove Plaintiffs from their respective positions "based upon a consideration of the totality of facts, circumstances and evidence bearing upon their performance and conduct in connection with their positions." Pls.' Statement ¶ 23; Defs.' Resp. Statement ¶ 23; Defs.' Suppl. Statement ¶ 147.

Plaintiffs also assert, and the County Defendants deny, that the Board terminated them for political reasons. Pls.' Statement ¶ 25; Defs.' Resp. Statement ¶ 25 Specifically, Plaintiffs claim that during the course of their duties to help the Board prepare the County's 2013 budget, Plaintiffs advised Freeholder Robert Walton that "[t]he County had a flat tax rate for a few years and [they] both felt this was compromising the County fiscally." Pls.' Joint Cert. in Supp. of Summ. Decision in Violation of N.J.S.A. 40A:9-25 for Political Reasons ("Cert. II") ¶¶ 5, 7-8. Plaintiffs state that Mr. Walton agreed that the County needed a tax rate increase, and subsequently proposed a half penny increase for the 2013 budget. Cert. II at ¶ 8. According to Plaintiffs, Freeholders Melick and Mennen opposed Mr. Walton's proposed tax increase. Cert. II at ¶ 8. Plaintiffs claim that County Administrator, Ms. Yard, as well as Mr. Melick and Mr. Mennen, conspired to retaliate against Plaintiffs for the tax advice that they gave to Mr. Walton. Pls.' Supp. Br. at 24-25. According to Plaintiffs, this conspiracy culminated in their termination by the Board based on Plaintiffs' support for the tax increase. *Id.*

On February 14, 2014, Plaintiffs filed *Pasqua I* in the Superior Court of New Jersey, Law Division, Hunterdon County, asserting that they were entitled to, among other things, a *de novo* review by the Superior Court of their termination hearings, pursuant to N.J.S.A. 40A:9-25. Plaintiffs also asserted claims against the County Defendants for terminating them for political reasons, in violation of N.J.S.A. 40A:9-25. The County Defendants moved to dismiss the Complaint for failure to state a claim.

On May 9, 2014, the Honorable Thomas C. Miller, P.J.Cv., dismissed Ms. Browne's claim for *de novo* review under N.J.S.A. 40A:9-25, because, as an at-will employee, she was not entitled to such a review under the statute. *Margaret Pasqua, et al., v. The County of Hunterdon, et al*, Civ. No. HNT-L-66-14, slip op at 7-8 (N.J. Law Div. May 9, 2014). However, because Plaintiffs alleged that Ms. Browne was terminated for political reasons, Judge Miller determined that she could state a claim for violation of N.J.S.A. 40A:9-25 on that basis. *Id.* at 8. Moreover, Judge Miller opined that although Ms. Browne did not have a federal property interest in her job, she might have a federal liberty interest in her "good name, reputation. honor, or integrity" that entitled her to a due process hearing under the Fourteenth Amendment of the United States Constitution to defend her good name. *Id.* at 9-10. Accordingly, Judge Miller gave Plaintiffs leave to amend their Complaint in *Pasqua I* to bring claims on behalf of Ms. Browne for political discharge, in violation of New Jersey law, and for federal Fourteenth Amendment due process violations. *Id.* at 12-13.

On June 20, 2014, Plaintiffs filed the Amended Complaint (1) requesting a *de novo* review of Plaintiffs' termination hearing, pursuant to N.J.S.A. 40A:9-25; (2) asserting claims for political discharge, pursuant to N.J.S.A. 40A:9-25, on behalf of both Plaintiffs; and (3) asserting a claim for infringement of Ms. Browne's "liberty including her rights to her reputation and her right to seek, gain, and maintain, contract for, and engage in employment and her right to fundamental

8

fairness," without due process, in violation of the United States Constitution, as well as the New Jersey Constitution. *Pasqua I* Am. Compl. ¶ 22. On July 2, 2016, Defendants removed the case to this Court, under 28 U.S.C.S. § 1331, based on original jurisdiction arising from Ms. Browne's federal due process claim. Presently, both parties move for summary judgment. In addition, the County Defendants seek to strike, as violative of L. Civ. R. 7.2(a) and Fed. R. Civ. P. 56(c)(4), Plaintiffs' certifications submitted in support of their Motion for Summary Judgment.

## II.   *Pasqua II*[5]

In addition to *Pasqua I*, Plaintiffs initiated a new complaint in *Pasqua II*.[6] Plaintiffs allege that after they were removed from their respective positions, Ms. Yard informed Plaintiffs that the purpose of the removal was to permit accountants to perform a forensic audit related to certain issues affecting the human resources department and health-benefit billings. *See Pasqua II Compl.* at ¶¶ 5-7. Plaintiffs allege, however, that the County had hired the Donohue Firm to perform Plaintiffs' work and that the firm did not, contrary to its representations, conduct an audit. Such an arrangement, Plaintiffs aver, was to ensure that the "true cause of any problems or conditions [plaguing human resources] would be covered up and that the blame would be inappropriately placed" on Plaintiffs. *Id.* at ¶ 8.

As to the Samuel Firm, Plaintiffs allege that for the years 2010-2012, the County hired the firm to "establish[], direct[] and sanction[] the establishment and maintenance of certain accounts

---

[5]   For the purposes of reviewing the Accountant Defendants' dismissal motions, I will take Plaintiffs' allegations as true in the *Pasqua II* Complaint and only recount the relevant facts. I note that Plaintiffs' allegations against the Accountant Defendants are sparse and generally lacking in specificity.

[6]   Like *Pasqua I*, *Pasqua II* was also first filed in state court before being removed by defendants.

and account balances particulary [sic] for the Parks Department (Golf Course) and the Transportation System. The [P]laintiffs were in responsible charge [sic] of the financial books and record of the County . . . and were required to establish and maintain accounts and audited account balances in accordance with the audit and directions of [the Samuel Firm] . . . ." *Id.* at ¶ 122. Plaintiffs claim, therefore, that any error related to the accounts on the part of Plaintiffs should be attributed to the Samuel Firm, and that the Samuel Firm violated its duty of care to Plaintiffs as a result. *Id.* at ¶ 123.

As to the Wiss Firm, Plaintiffs allege that, in 2013, the firm was hired by the County to perform certain audits related to the accounts which Plaintiffs were overseeing. *Id.* at ¶¶ 127-28. Based, in part, on these audits, the County decided to bring charges against Plaintiffs. *Id.* at ¶ 128. Plaintiffs allege that the Wiss Firm's audits were erroneous because the Wiss Firm used a different accounting method than a previous auditor had used, and therefore, the alleged discrepancies relied upon by the County to assert charges against Plaintiffs were not proper. *Id.* In Plaintiffs' view, the Wiss Firm knew that Plaintiffs were not the cause of those discrepancies and it owed Plaintiffs the duty to inform the County of that fact. *Id.* at ¶ 130.

Plaintiffs' *Pasqua II* Complaint is not a model of clarity. While Plaintiffs assert twenty-one causes of action against all defendants, including the Accountant Defendants, not all causes of action are specifically identified such that it would be readily apparent what type of claim(s) Plaintiffs are bringing in each count. It appears that the majority of the claims asserted are state law based. Of the twenty-one counts, only five counts are directed against the accounting firms; those counts are based on, *inter alia*, allegations of professional negligence, conspiracy and breach of duty of care. The remaining state and federal claims are asserted against the County Defendants and the Individual Defendants, and they are not subject to the pending dismissal motions. In that

regard, the Court only gleans four federal causes of action, brought pursuant to § 1983, against these non-moving defendants, i.e., Counts 5, 12, 13 and 14.. However, because Plaintiffs, in the most conclusory terms, allege that a violation of § 1983 has occurred in each of those four counts, the legal and factual bases for liability under § 1983 are vague at best.

## DISCUSSION

I.   **Standard of Review**

A.       **Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### B.        Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of

the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.   *Pasqua I* – Motions for Summary Judgment

### A.  Plaintiffs' Certifications

Before I address the merits of Plaintiffs' claims, I consider first the County Defendants' request to strike two of Plaintiffs' joint certifications, submitted in support of Plaintiffs' Motion for Summary Judgment. The County Defendants argue that Plaintiffs' certifications are rife with conclusions outside of Plaintiffs' personal knowledge and legal arguments in violation of L. Civ. R. 7.2(a), and therefore, both certifications should be stricken in their entirety.

Pursuant to L. Civ. R. 7.2(a),

[a]ffidavits, declarations, [and] certifications . . . shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

L. Civ. R. 7.2(a). Any certification, or portion of a certification, that violates this rule must be disregarded by the court. *See Fowler v. Borough of Westville*, 97 F.Supp.2d 602, 607 (D.N.J. 2000) (holding that courts may disregard statements in affidavit which are not based on personal knowledge). Similarly, Fed. R. Civ. P. 56(c)(4) provides that declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Based on my review of Plaintiffs' certifications, I find certain paragraphs of those documents do indeed violate the rules, and therefore, those paragraphs will be disregarded on these motions.

I start with Plaintiffs' "Certification in Support of Summary Decision" ("Certification I"). In that document, many legal arguments and conclusions are couched as facts based on first-hand knowledge. For example, Plaintiffs certify that the Hearing Officer failed to fulfill his obligations to make a detailed decision in accordance with due process. Cert. I at ¶ 2. That statement is a legal conclusion and is inappropriately asserted in Plaintiffs' certification. *See Hiriam Hicks, Inc. v. Synagro WWT, LLC*, 867 F. Supp. 2d 676, 680 (E.D. Pa. 2012) (finding that legal conclusions are not proper statements to make in a personal declaration). The rest of Certification I is replete with similar statements that contain legal conclusions as well as facts that are not within Plaintiffs' ken; those statements will also be disregarded: Cert. I at paragraph 3 ("Based upon [the Hearing Officer's] 'Preliminary Report' the Freeholders terminated our employment.") and the entirety of paragraph 5. Egregiously, the entire content of Certification I's paragraph 5 contains legal arguments and conclusions, and thus, will be struck.

Certain paragraphs of Plaintiffs' "Certification in Support of Summary Decision in Violation of N.J.S.A. 40A:9-25 for Political Reasons" ("Certification II") also must be disregarded: (1) paragraph 4 sets forth statutory definitions that are not appropriate in a certification; (2) paragraph 6 states legal conclusion regarding the reasons why, in Plaintiffs' view, they were terminated; (3) paragraphs 8, 9, 11, and 19 contain Plaintiffs' statements regarding Ms. Yard and the Freeholders' mindset which is not based on first-hand knowledge; (4) paragraphs 9, 10, 12, 13, and 14 inappropriately conclude that Ms. Yard harassed and intimidated Plaintiffs for political reasons; and (5) paragraph 15 also contains legal conclusions regarding the Freeholders' alleged activities.

Accordingly, the above-referenced paragraphs of Certification I and Certification II are stricken.

### B.      Ms. Browne's Right to a *De Novo* Review (Count Three)

Plaintiffs assert that Ms. Browne has a statutory right to a *de novo* review of the Board's decision to terminate her, pursuant to N.J.S.A. 40A:9-25. However, Plaintiffs are precluded by the law of the case from asserting this claim, because Judge Miller dismissed it as a matter of law in his May 9, 2014 opinion. *See Margaret Pasqua*, slip op at 7-8.

N.J.S.A. 40A:9-25 provides that "[t]he Superior Court shall have jurisdiction to review the determination of the governing body and shall hear the cause *de novo* on the record below" as to the removal of a county officer or employee "who shall be removable from his office or position only for cause." N.J.S.A. 40A:9-25. Judge Miller found that "Plaintiff Browne is not among the class of individuals entitled to a hearing prior to termination included within N.J.S.A. 40A:9-25," because she "was an unclassified employee" and "could be terminated with or without cause." *Margaret Pasqua*, slip op at 7-8.

After removal of a case, "the federal court 'takes the case up where the State court left it off.'" *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436 (1974) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)). Typically, a decision rendered by a state court in a case prior to its removal constitutes the "law of the case." *Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 708 (E.D. Pa. 2015). Pursuant to the law of the case doctrine, it is "the practice of courts generally to refuse to reopen what has been decided . . . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 803 (1988). As a rule, courts generally "should be loathe [to revisit prior decisions] in the absence of absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)).

16

Here, because Judge Miller already dismissed Ms. Browne's claim under N.J.S.A. 40A:9-25 for a *de novo* review of the Board's decision to terminate her — a decision with which this Court concurs — the law of the case doctrine dictates that this Court should refuse to revisit his decision unless it was clearly erroneous and a work of manifest injustice. To that point, however, Plaintiffs do not argue, nor could they, that Judge Miller's decision was contrary to law. Instead, Plaintiffs simply assert that Judge Miller found in his opinion that Ms. Browne "was entitled to a *de novo* review under New Jersey law and the New Jersey Constitution since she never received the initial due process hearing that she was entitled to because her liberty interests were implicated." Pls.' Br. in Opp'n to Defs.' Cross-Mot. Summ. J. Mot. and to Strike Certs. ("Pls.' Reply Br.") 13. Simply put, this reading of Judge Miller's opinion stretches credulity.

Certainly, Judge Miller found that Ms. Browne could state a cause of action under N.J.S.A. 40A:9-25, insofar as the statute prohibits the termination of employees for political reasons. *Margaret Pasqua*, slip op at 8. However, Judge Miller also emphasized that "this provision of the statute does not provide a right to hearing" for Ms. Browne. *Id.* Accordingly, because Ms. Browne is not entitled to a hearing under New Jersey law, it logically follows that she is not entitled to a *de novo* review of a hearing to which she has no statutory right. And, moreover, nothing in the statute or Judge Miller's opinion, indicates that once a county decides to provide an at-will employee a termination hearing, her rights are extended to include a right to a *de novo* review of said hearing under N.J.S.A. 40A:9-25. Not surprisingly, therefore, Plaintiffs have not cited to any authority to support that position. Similarly, although Judge Miller opined that Ms. Browne may have a constitutional due process claim arising from her liberty interest in her reputation, which may have entitled her to a hearing to clear her good name at the time of her termination, at no point

17

in his opinion did he find that such a claim would extend to Ms. Browne a right to *de novo* review of her termination hearing under N.J.S.A. 40A:9-25.[7] *See Margaret Pasqua*, slip op at 9-12.

In short, because Judge Miller previously dismissed Ms. Browne's claim for a *de novo* review of her termination hearing, pursuant to N.J.S.A. 40A:9-25, she cannot re-assert this claim. Accordingly, the County Defendants' Cross-Motion for Summary Judgment is granted as to Count Three and Plaintiffs' corresponding Motion for Summary Judgment is denied.

### C.     Ms. Pasqua and Ms. Browne's Political Discharge Claims (Counts Two and Four)

Both Ms. Pasqua and Ms. Browne bring claims for political discharge in violation of N.J.S.A. 40A:9-25, which provides that "[n]o [county] officer or employee shall be removed from his office or position for political reasons." N.J.S.A. 40A:9-25. Specifically, Plaintiffs assert that the Board removed Plaintiffs from their positions because Plaintiffs had advised Mr. Walton to increase the County's tax rates for the 2013 County budget. The County Defendants counter that Ms. Browne, as an at-will employee, cannot bring such a claim, and moreover, that both Plaintiffs have not submitted sufficient evidence to defeat summary judgment.

In arguing that Ms. Browne may not bring a claim under the political discharge provision of N.J.S.A. 40A:9-25, the County Defendants rely on *Siss v. Cty. of Passaic*, 75 F. Supp. 2d 325 (D.N.J. 1999). The *Siss* court found that N.J.S.A. 40A:9-25 in its entirety, including the political discharge provision, does not provide any protections to county employees or officers that may be

---

[7] The Court emphasizes that when a government employee's constitutional liberty interest in her reputation has been impinged by her employer, in connection with her termination, the court in which the employee brings suit does not perform a *de novo* review of the employee's termination hearing, assuming she even had one. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Instead, the court looks to whether "the procedures available to [the employee] did not provide 'due process of law.'" *Id.*

18

terminated at will. *Siss*, 75 F. Supp. 2d at 339 ("[A]ssistant county counsels are not employees who are 'removable … only for cause.' Thus, they are not statutorily protected from being discharged 'for political reasons' [under N.J.S.A. 40A:9-25]") (internal citations omitted). According to the *Siss* court's reading of the statute, the whole of N.J.S.A. 40A:9-25 "relat[es] [only] to county officers and employees who are 'removable . . . only for cause.'" *Id.* Thus, the proscription within the body of N.J.S.A. 40A:9-25 that "[n]o officer or employee shall be removed from his office or position for political reasons" applies only to employees or officers who are removable only for cause. *Id.* Under the *Siss* court's interpretation of N.J.S.A. 40A:9-25, Ms. Browne is not among the class of county employees protected from termination for political reasons.[8]

However, in his May 9, 2014 opinion, Judge Miller read N.J.S.A. 40A:9-25 very differently from the *Siss* court. *See Margaret Pasqua*, slip op at 8. Judge Miller observed that whereas certain portions of N.J.S.A. 40A:9-25 are expressly limited to employees and officers that may only be removed for cause, the political discharge provision "makes no distinction between classified or unclassified employees. Rather, it speaks broadly in terms of 'no officer or employee.'" *Id.* In that regard, Judge Miller interpreted the statute's prohibition against political discharge as applying to all public employees, regardless of whether they may be terminated with or without cause. *Id.* Thus, under Judge Miller's ruling, Ms. Browne would have been protected from political discharge under N.J.S.A. 40A:9-25.

---

[8]    The Court notes that the *Siss* court did not limit all political discharge claims to at-will employees, but merely limited such claims under N.J.S.A. 40A:9-25. *Siss*, 75 F. Supp. 2d at 340. In the context of constitutional political discharge claims, the *Siss* court found that "[w]hether an employee serves for a fixed term or at will, the employee has the same first amendment rights, since those, of course, exist independently of any other rights to continued employment." *Id.*

Although Judge Miller's reading of N.J.S.A. 40A:9-25 conflicts with the opinion of the *Siss* court, this Court finds his interpretation entirely reasonable, and certainly not "clearly erroneous" or "manifestly unjust." *See Christianson*, 486 U.S. at 803. Indeed, a New Jersey federal district court's interpretation of a New Jersey statute is not binding on a New Jersey state court. *See State v. Coleman*, 46 N.J. 16, 36 (N.J. 1965); *In re Summit & Elizabeth Tr. Co.*, 111 N.J. Super. 154, 166 (N.J. App. Div. 1970) ("in the construction and application of our statutes we are not bound by a decision of the federal district court"). For these reasons, under the law of the case doctrine, this Court will not revisit Judge Miller's decision on this issue. *See Christianson*, 486 U.S. at 817. Accordingly, consistent with Judge Miller's opinion — Ms. Browne may bring a claim for political discharge under N.J.S.A. 40A:9-25, despite her at-will employment status.

In addition to New Jersey's statutory protections against political discharge, the United States Supreme Court has long recognized that "termination of public employees because of their political affiliation violates the First Amendment unless the position at issue involves policymaking." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). In the instant case, Plaintiffs only bring claims for political discharge under N.J.S.A. 40A:9-25, and not the United States Constitution.[9] However, there is a dearth of case law applying the political discharge provision of N.J.S.A. 40A:9-25. Thus, the County Defendants propose, and Plaintiffs do not object, that the Court should apply federal law in the context of political discharge to Plaintiffs' state-

---

[9]     Plaintiffs raise a constitutional political discharge claim for the first time in their reply brief. *See* Pls.' Reply Br. at 17. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008). But regardless, for the same reasons that Plaintiffs have not submitted sufficient evidence to support a state political discharge claim, they have not provided sufficient evidence to support a federal constitutional political discharge claim

based political discharge claims, because the two types of claim are substantially similar. The Court is satisfied that in the absence of other guiding state case law, it is appropriate to apply the test for constitutional political discharge to determine whether Plaintiffs have been removed from their offices "for political reasons," in violation of N.J.S.A. 40A:9-25.

To state a prima facie case for political discharge in violation of the First Amendment, a plaintiff "must show that (1) she was employed at a public agency in a position that does not require political affiliation, (2) she was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli*, 490 F.3d at 271. Once a plaintiff makes this demonstration, the defendant public agency may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Id.* (internal quotations omitted).

The parties do not dispute that Plaintiffs satisfy the first element of the three-prong political discharge test, however, the County Defendants contend that Plaintiffs have not provided evidence satisfying either the second or third elements of the test. The Court agrees that under the facts presented by Plaintiffs, as a matter of law, Plaintiffs' conduct at issue — their recommendation to Mr. Walton that the County increase its tax rates — was not constitutionally protected conduct. And, moreover, even taking the evidence in the light most favorable to Plaintiffs, they have failed to produce evidence reasonably demonstrating that the Board decided to terminate them because of this recommendation. Indeed, Plaintiffs fail to show that all members of the Board were aware of Plaintiffs' tax advice, let alone that the Board terminated them because of these preferences.

I first address Plaintiffs' contention that they were rightfully "exercising [their] First Amendment rights by expressing [their] professional opinion that a tax increase was necessary."[10] Cert. II at ¶ 14. Plaintiffs' argument is contrary to law. The Supreme Court held in *Garcetti v. Ceballos* that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). In *Garcetti*, a plaintiff deputy district attorney for a county district attorney's office wrote, during the course of his duties, a disposition memorandum explaining his concerns regarding alleged inaccuracies in an affidavit used to obtain a search warrant in a pending criminal case. *Id.* at 414. According to the plaintiff deputy district attorney, his supervisors retaliated against him based on the memo. *Id.* at 415. Consequently, the plaintiff brought a First Amendment retaliation claim against the county, his supervisors, and the district attorney. *Id.* The Supreme Court upheld the district court's dismissal of the *Garcetti* plaintiff's claim, on the basis that the First Amendment does not protect "an employee's expressions made pursuant to official responsibilities." *Id.* at 424; *see also Gorum v. Sessoms*, 561 F.3d 179, 186 (3d Cir. 2009) (professor who spoke on behalf of a student at a disciplinary hearing was speaking pursuant to his official duties when he was a "de facto" advisor to students on disciplinary matters); *Foraker v. Chaffinch*, 501 F.3d 231, 241-43 (3d Cir. 2007) (holding that police officers' statements concerning hazardous conditions at a firing range were made pursuant to their official duties since they were obligated to report that type of information up the chain of command)*; Borough of Kutztown,* 455 F.3d at 242 (First Amendment

---

[10]     The First Amendment to the United States Constitution protects both freedom of speech and freedom of association. *See* US Const. Amend. 1. The Court notes that Plaintiffs couch their alleged "constitutionally protected conduct" in terms of political speech rather than political affiliation.

does not protect report by borough employee to borough council made pursuant to his official duties).

As the Supreme Court explained, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 421-22. In fact, "[t]o hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers." *Id.* at 423. The critical question that a court must resolve when determining if particular speech by a government employee is protected by the First Amendment "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

In the instant case, Plaintiffs' joint certification makes clear that, like the plaintiff in *Garcetti*, their advice to Mr. Walton regarding the increase in the County's taxes was made in the course of their ordinary duties as County employees. According to Plaintiffs, their job responsibilities required them to "assist with the development of the budget for the County." Cert. II at ¶ 5. Plaintiffs certify that in the course of fulfilling these duties, they advised Mr. Walton that it was their opinion that the current flat tax rate was "was compromising the County fiscally." *Id.* at ¶¶ 7-8. Thus, based on Plaintiffs' own certification, these statements of opinion regarding County tax policy were made in the course of performing their ordinary job duties, rather than as "citizen[s] addressing a matter of public concern." *See Garcetti*, 547 U.S. at 423. As such, under the facts averred by Plaintiffs themselves, Plaintiffs statements are not protected conduct under the

First Amendment. *See id.* Accordingly, Plaintiffs fail to meet the second element of a political discharge claim.

Additionally, even assuming Plaintiffs' expression of their opinions regarding County tax policy was constitutionally protected conduct, they have failed to produce evidence reasonably demonstrating that all members of the Board who voted for Plaintiffs' discharge had knowledge of this conduct. Implicit in the third prong of the political discharge test "is a requirement that the plaintiff produce sufficient evidence to show the defendant[s] knew of plaintiff's political persuasion [or opinion]." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002). Logically, a plaintiff cannot argue that she was fired for political reasons if her employer had no knowledge of her political views. *Galli*, 490 F.3d at 275. Thus, a plaintiff must first demonstrate that the defendant was aware of the "constitutionally protected conduct" at issue, before she can attempt to establish that defendant terminated her because of such conduct. *Id.*; *Goodman*, 293 F.3d at 670-73; *Wallett v. Pa. Tpk. Comm'n*, 528 F. App'x 175, 180 (3d Cir. 2013). This "[p]roof of knowledge can come from direct or circumstantial evidence." *Goodman*, 293 F.3d at 664.

In the instant case, of the five Freeholders on the Board, Plaintiffs have failed to provide evidence that Mr. Melick, Mr. Mennen, and Mr. King had knowledge of Plaintiffs' tax advice to Mr. Walton. Admittedly, Plaintiffs have provided some evidence that Mr. Walton and Mr. Holt knew of Plaintiffs' position on the issue of tax increases, but Plaintiffs do not assert that these Freeholders resented Plaintiffs' tax policies. To the contrary, according to Plaintiffs, Mr. Walton was on board with their tax advice, particularly since both Mr. Walton and Mr. Holt attempted to warn Plaintiffs that they "had a target on their backs." Importantly, while it is Mr. Melick and Mr. Mennen, who Plaintiffs allege conspired to retaliate against them, Plaintiffs have nonetheless failed to demonstrate that Mr. Melick or Mr. Mennen ever had knowledge of Plaintiffs' opinions

24

on County tax policies. Furthermore, Mr. Mennen was not even present for the Board vote to terminate Plaintiffs. Without any evidence suggesting that at least a majority of the Board members that voted to terminate Plaintiffs (Mr. Walton, Mr. Holt, Mr. Melick, and Mr. King) were aware of Plaintiffs' position and disagreed with it, Plaintiffs cannot prove on their Motion for Summary Judgment that they were terminated for political reasons. Moreover, Plaintiffs' narrative further stretches credulity by virtue of the fact that only one of their alleged antagonists, Mr. Melick, was actually present at the Board meeting at which two other supposedly friendly Freeholders and one apparently neutral Freeholder also voted to terminate Plaintiffs.

As stated above, Plaintiffs aver in their joint certification, that in 2012, in the course of helping to prepare the County's 2013 budget, they advised Mr. Walton that the County's tax rates should be increased. Cert. II at ¶ 7. Clearly, this is sufficient evidence to demonstrate that Mr. Walton had knowledge of these opinions. Additionally, Plaintiffs certify that Freeholders Walton and Holt warned them at some point that Plaintiffs "had a target on [their] backs because of the advice [they] gave about the budget tax increase." Cert. II at ¶ 8. However, in direct contradiction to this claim, Mr. Walton and Mr. Holt each certify that they never made such warnings to either Plaintiff. Cert. of Robert G. Walton ("Walton Cert.") ¶ 3; Cert. of J. Matthew Holt ("Holt Cert.") ¶ 3. The Court cannot resolve credibility issues on a motion for summary judgment. *See Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1250 (3d Cir. 1992). But resolving this conflict of evidence in the light most favorable to Plaintiffs, these alleged statements appear to indicate that Mr. Holt, in addition to Mr. Walton, had knowledge of Plaintiffs' advice regarding the County's tax rates. However, Plaintiffs do not claim to have ever informed anyone else of Plaintiffs' advice, or that Mr. Walton and Mr. Holt passed Plaintiffs' advice along to the other members of the Board. Without more, Mr. Walton and Mr. Holt's knowledge of Plaintiffs'

opinions cannot reasonably be imputed to Mr. Melick, Mr. Mennen, or Mr. King. Furthermore, Mr. Walton and Mr. Holt's alleged warning to Plaintiffs is so vague that it is not at all clear who was "gunning" for Plaintiffs, or how they might pose a threat. Indeed, there is absolutely nothing connecting this generalized warning to Mr. Melick and Mr. Mennen's alleged "conspiracy," or to the Board's decision to terminate Plaintiffs.

Plaintiffs broadly assert in their joint certification that "County Administrator Cynthia Yard as well as Freeholders Melick and Mennen held it against us that we supported Freeholder Walton's decision for an increase" and that these individuals "felt a tax increase compromised their political positions." Cert. II at ¶ 8. However, as explained *supra*, the Court will not consider these portions of Plaintiffs' certifications, because they are not based on Plaintiffs' personal knowledge, but are instead purely speculative and personal opinion. *See Borough of Westville*, 97 F.Supp.2d at 607 (holding that courts may disregard statements in affidavit which are not based on personal knowledge). In that regard, Plaintiffs provide no evidence that Mr. Melick or Mr. Mennen held any animosity towards Plaintiffs for political reasons, or indeed were even aware of Plaintiff's opinions on County tax policy. The only admissible facts contained in Plaintiffs' evidentiary submissions regarding these Board members are that (1) they opposed Mr. Walton's proposed tax increase in 2012, (2) Mr. Melick voted, along with the rest of the Board members, to terminate Plaintiffs, and (3) Mr. Mennen was not present for the Board decision to terminate Plaintiffs. Cert. II at ¶¶ 8, 18-19; De Sapio Cert Attach. B 1. First, the vote to approve the 2013 budget in 2012 and the vote to terminate Plaintiffs in December 2013 are so far attenuated in time frame from one another that, standing alone, it is unreasonable to infer by temporal proximity that they were at all connected. And, moreover, these facts provide no support for Plaintiffs' assertion that Mr. Melick or Mr. Mennen were aware of Plaintiffs' opinions regarding County tax policy.

Plaintiffs, admittedly, do provide limited circumstantial evidence that Ms. Yard may have harbored some kind of animosity towards them, possibly arising from the tax advice they gave to Mr. Walton. Setting aside those aspects of Plaintiffs' certifications that are inadmissible statements of opinion and law, Plaintiffs certify that after the Board's 2012 vote on Mr. Walton's tax policy, (1) Ms. Yard was "notably cooler" to Plaintiffs, (2) she visited the Finance offices less frequently than she had in previous years, and (3) she repeatedly referred to Mr. Walton as Ms. Browne's "boyfriend." Cert. II at ¶ 9. Although this evidence is circumstantial, it could reasonably support a finder of fact's determination that Ms. Yard was angry with Plaintiffs, and that this anger was somehow connected to their tax advice. Importantly, however, Ms. Yard's knowledge of Plaintiffs' tax policy preferences, and her alleged subsequent resentment of Plaintiffs, is not dispositive of the present Motion for Summary Judgment, because it was the Board, and not Ms. Yard, that made the decision to terminate Plaintiffs. To be clear, Plaintiffs have also failed to submit any evidence that Ms. Yard informed the Board about Plaintiffs' views on the tax rate, assuming that Ms. Yard even had such knowledge.

To survive the pending Motion for Summary Judgment, Plaintiffs need to demonstrate that the Board's decision to terminate them was somehow based on Plaintiffs' opinions on County tax policy. *See Galli*, 490 F.3d at 271. Given the current evidentiary record, the Court cannot find that Ms. Yard's alleged desire to discharge Plaintiffs for political reasons had any causal connection to the Board's decision to terminate Plaintiffs. In sum, while Plaintiffs claim that Mr. Melick and Mr. Mennen somehow conspired to have the Board as a whole terminate Plaintiffs for their views on County tax policies, they have proffered no evidence indicating that these individuals were aware of Plaintiffs' tax views, let alone that Mr. Melick and Mr. Mennen harbored some sort of animosity towards Plaintiffs. Moreover, only Mr. Melick, and not Mr. Mennen, participated in the Board

27

vote to terminate Plaintiffs. Considering that Mr. Melick was only one of four Freeholders that unanimously voted to terminate Plaintiffs, and given Plaintiffs' assertion that of the Board members, only Mr. Melick and Mr. Mennen wished to retaliate against them, it defies simple math to assert that the Board as a whole terminated Plaintiffs for political reasons.

Plaintiffs have failed to provide a sufficient evidentiary basis on which a reasonable jury could conclude that Plaintiffs' tax views were a substantial and motivating factor in the Board's decision to discharge them. Because Plaintiffs have failed to provide sufficient support for both the second and third elements of a political discharge claim, County Defendants' Cross-Motion for Summary Judgment is granted as to Plaintiffs' claims for political discharge under N.J.S.A. 40A:9-25 (Counts Two and Four), as well as any such claims asserted under 42 U.S.C.S. § 1983. Plaintiffs' Motion for Summary Judgment regarding the same is denied.

### D.    Ms. Browne's Federal Due Process Claim (Counts Five and Six)

Ms. Browne asserts a claim against the County Defendants under 42 U.S.C.S. § 1983 for deprivation of procedural due process, in violation of the Fourteenth Amendment of the United States Constitution. To succeed on a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must demonstrate that "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'" *Borough of Kutztown*, 455 F.3d at 233-34. Here, Ms. Browne asserts that she was deprived of her liberty interests in her reputation without sufficient due process of law. *Pasqua I* Am. Compl. ¶¶ 22-23.

The Supreme Court held in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), that an individual has a federal protectable interest in her reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to [her], notice

28

and an opportunity to be heard are essential." *Id.* at 437. "Courts have subsequently clarified, however, that 'reputation alone is not an interest protected by the Due Process Clause.'" *Borough of Kutztown*, 455 F.3d at 236 (quoting *Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to [her] reputation plus deprivation of some additional right or interest." *Borough of Kutztown*, 455 F.3d at 236 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Siegert v. Gilley*, 500 U.S. 226, 233-234 (1991); *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir. 1998); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077-1078 (3d Cir. 1997); *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83 n. 5 (3d Cir. 1996); *Clark v. Township of Falls*, 890 F.2d 611, 619-620 (3d Cir. 1989); *Sturm v. Clark*, 835 F.2d 1009, 1012-1013 (3d Cir. 1987)). The Third Circuit refers to this as the "stigma-plus" test. *Borough of Kutztown*, 455 F.3d at 236.

Applied in the context of public employment, under the stigma-plus test, "when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Id.* (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)). As the Third Circuit has explained, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Borough of Kutztown*, 455 F.3d at 236. In that connection, to satisfy the "stigma" prong of the test, a plaintiff must demonstrate that her employer's stigmatizing statements "(1) were made publicly and (2) were false." *Id.* (internal citations omitted). A plaintiff will satisfy the "plus" prong of the test if she has been terminated or constructively discharged from her position as a public employee. *Id.* at 238.

29

In the instant matter, although Ms. Browne clearly satisfies the "plus" prong of the stigma-plus test, she has failed to submit any evidence satisfying the "stigma" prong of the test.

Plaintiffs allege in their Amended Complaint that

> The defendants and others issued or made public comments, to the detriment of plaintiffs thereby resulting in damage to their reputations. Those statements were made without a basis in fact and/or in reckless disregard of the truth or with malice. The statements made or released indicated that there was a necessity for a forensic audit of the finance department and were untrue. The County Finance Department has operated under the highest standards. The plaintiffs have consistently protected the County and its taxpayers and insured [sic] that all legal requirements for the budgeting, payment and utilization of County funds have been scrupulously followed. Plaintiffs performed each and every of their duties competently and in accordance with legal requirements. Statements and reports made by the defendants to the contrary were defamatory and libelous.

*Pasqua I* Am. Compl. ¶ 33. However, Plaintiffs do not reference these alleged public defamatory comments in either their statement of material facts not in dispute or their briefs. Indeed, Plaintiffs ignore this element of Ms. Browne's claim entirely, and instead argue that "the due process clause requires that every public employee, no matter what the terms of employment, is entitled to a pre-termination hearing." Pls.' Supp. Br. at 5. This is a gross mischaracterization of the case law.

The Supreme Court has clearly distinguished between the due process rights of public employees who have a constitutional property interest in their employment and those who do not. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest in one's employment that is protected by the Fourteenth Amendment, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Roth*, 408 U.S. at 577). The law is clear that an at-will employee, like Ms. Browne, "does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer." *Elmore,* 399 F.3d at 282. Thus, Ms. Browne may not, as Plaintiffs assert, bring a

Fourteenth Amendment due process claim simply because she was terminated from public employment "no matter what the terms of [her] employment."

However, the fact that Ms. Browne does not have a property interest in her job does not preclude her from bringing a due process claim arising from injuries to her reputation. Indeed, the Third Circuit has proclaimed that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." *Borough of Kutztown*, 455 F.3d at 238. But, as stated *supra*, the "stigma" element of such a claim requires the plaintiff public employee to demonstrate that the defendant government employer created and disseminated to the public defamatory statements that were injurious to the plaintiff's reputation. *Bishop v. Wood*, 426 U.S. 341, 348 (1976) (reputational liberty interest not implicated when a public at-will employee is discharged and "there is no public disclosure of the reasons for the discharge."); *Chabal v. Reagan*, 841 F.2d 1216, 1223-24 (3d Cir. 1988) (reputational liberty interest not implicated where plaintiff public employee failed to show that "the reasons for his removal were disseminated to the public"); *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1222 (3d Cir.1988) (reputational liberty interest not implicated where plaintiff failed to show that the allegedly defaming polygraph test results were made public).

Here, Plaintiffs have presented no evidence that the County Defendants have publicly disseminated any information that would be injurious to Ms. Browne's reputation. Indeed, although Plaintiffs allege in their Amended Complaint that the County Defendants "issued or made public comments . . . indicat[ing] that there was a necessity for a forensic audit of the finance department," *Paqua I* Am. Compl. ¶ 33, nowhere in either Plaintiffs' statement of material facts not in dispute or their briefs do Plaintiffs identify what these statements were, when they were

made, or how they were disseminated. While such allegations may have been sufficient to state a claim on a motion to dismiss, on the present Motions for Summary Judgment, Plaintiffs must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324. Here, even taking all evidence in the light most favorable to Plaintiffs, they have failed to make any showing, let alone a showing sufficient to establish the existence of "stigma" element of Ms. Browne's federal due process claim.[11] Consequently, I grant the County Defendants' Cross-Motion for Summary Judgment as to Ms. Browne's federal due process claim (Counts Five and Six) and deny Plaintiffs' Motion for Summary Judgment regarding the same.

### E.    Ms. Browne's State Due Process Claim (Counts Five and Six)

Ms. Browne asserts a claim against the County Defendants for deprivation of procedural due process, in violation of the New Jersey Constitution. The New Jersey Supreme Court has found a protectable interest in reputation in Article 1 Paragraph 1 of the New Jersey Constitution, which provides that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const., Art. I, Para. 1; *Doe v. Poritz*, 142 N.J. 1, 104-06 (N.J. 1995). As the New Jersey Supreme

---

[11]    The Court notes that Plaintiffs also reference a constitutional "right to fundamental fairness" in their Amended Complaint, *Pasqua I* Am. Compl. ¶ 22, but do not assert such a claim separate from Ms. Browne's reputational liberty interest claim. And, moreover, Plaintiffs provide no substantive arguments in their briefings as to why such a constitutional right applies in the instant case. As such, the Court does not construe this reference as the assertion of a separate claim under the Fourteenth Amendment.

Court has explained, "[t]he right of a person to be secure in his reputation . . . is a part of the right of enjoying life and pursuing and obtaining safety and happiness which is guaranteed by our fundamental law." *Poritz*, 142 N.J. at 104-05 (quoting *Neafie v. Hoboken Printing & Publ'g Co.*, 75 N.J.L. 564, 567 (E&A 1907)). These protections to reputation are broader than those provided by the federal constitution, because they do not require the "plus" prong of the stigma plus test — "injury to reputation alone suffice[s]." *Filgueiras v. Newark Pub. Sch.*, 426 N.J. Super. 449, 473 (N.J. App. Div. 2012) (citing *Poritz*, 142 N.J. at 104). Thus, under the New Jersey Constitution, "[w]here a [person's] good name or reputation are at stake because of what the government is doing to that person . . . sufficient constitutional interests are at stake" to trigger due process protections. *Poritz*, 142 N.J. at 105.

As with the federal claim discussed, *supra*, a necessary element of a New Jersey constitutional reputational due process claim is the government's public dissemination of information that causes stigma or harm to the plaintiff's reputation. *See id.* at 106; *In re L.R.*, 321 N.J. Super. 444, 460 (N.J. App. Div. 1999). Indeed, in *Doe v. Poritz*, a case involving the creation of a state sex offender registry, the New Jersey Supreme Court distinguished between "Tier One" offenders, whose information would be published only to prosecutors and local law enforcement, and "Tier Two" and "Tier Three" offenders, whose information was made available to the public at large. 142 N.J. at 106. According to the *Doe* court, the reputations of the Tier Two and Tier Three offenders were implicated by the creation of the registry, but the reputations of the Tier One offenders were not, because publication of the damaging information on the registry was limited to state employees. *Id.*

Similarly, in *In re L.R.*, the New Jersey Appellate Division explained that "[a]lthough the New Jersey Constitution extends due process protection to personal reputation, without requiring

33

any other tangible loss, this does not mean that a liberty interest is implicated anytime a governmental agency transmits information that may impugn a person's reputation." *In re L.R.*, 321 N.J. Super. 444, 460 (N.J. App. Div. 1999) (internal quotations and citations omitted). *L.R.* involved the investigation by the Division of Youth and Family Services, New Jersey Department of Human Services (the "DYFS") of public school teachers charged with committing acts of child abuse upon their students. *Id.* at 448-49. At the conclusion of its investigation, DYFS sent letters to the parents and guardians of the abused students, as well as the school district, stating that the allegations of child abuse had not been substantiated, but that the teachers' conduct has placed their students at undue risk of harm. *Id.* The plaintiff teachers brought claims against the DYFS for, among other things, injury to their reputations without due process of law, in violation of the New Jersey Constitution. *Id.* at 460. The *L.R.* court found that government "transmittals of investigatory findings to the parents and guardians of alleged abused students and the school district constituted a significantly more limited dissemination of adverse information than the notifications concerning the presence of Tier II and III sex offenders in a community which the Court in *Doe* found to require due process protections." *Id.* The *L.R.* court ultimately dismissed the plaintiff teachers' claims, on the basis that "DYFS' limited dissemination of the results of its investigations did not cause the kind of damage to reputation which would entitle appellants to a hearing." *Id.*

Here, as discussed *supra*, Plaintiffs have presented no evidence that the County Defendants have publicly disseminated any information that would harm Ms. Browne's reputation. Indeed, although Plaintiffs allege in their Amended Complaint that the County Defendants made public defamatory statements about Ms. Browne, nowhere in either Plaintiffs' statement of material facts not in dispute or their briefs do Plaintiffs identify what these statements were, when they were

made, or how they were disseminated. On these Motions for Summary Judgement, Plaintiffs'

allegations are simply not sufficient to find that they have suffered any reputational harm. Plainly,

following the reasoning in *Doe* and *L.R.*, Plaintiffs have failed to produce evidence demonstrating

a critical element of Ms. Browne's state due process claim — dissemination of information by the

County Defendants that is harmful to Ms. Browne's reputation. Accordingly, the County

Defendants' Cross-Motion for Summary Judgment as to Ms. Browne's state due process claims

(Counts Five & Six) is granted, and Plaintiffs' Motion for Summary Judgment regarding the same

is denied.

### F.    Ms. Pasqua's Right to a *De Novo* Review (Count One)

With the dismissal of Counts Two through Six of the Amended Complaint in *Pasqua I*, all

that remains is Count One: Ms. Pasqua's claim under N.J.S.A. 40A:9-25 for a *de novo* review of

the Board's decision to terminate her.[12] I note that on these summary judgment motions, I found

it appropriate to adjudicate Plaintiffs' state political discharge claims because their resolution

involved application of federal constitutional law, and more importantly, Plaintiffs have brought a

parallel federal political discharge claim in *Pasqua II*. The remaining claim brought by Ms. Pasqua

is purely state law based, and does not implicate any federal law.

Under 28 U.S.C.S. § 1367(c), a district court may decline to exercise supplemental

jurisdiction over a claim if the court "has dismissed all claims over which it has original

---

[12]    The Amended Complaint also contains a Count Seven for "protective pleading under the
entire controversy doctrine." In this count, Plaintiffs request "a determination that damage claims
do not need to be asserted or pled at this time under the Entire Controversy Doctrine, Rule 4:30A
and that they may be asserted in a subsequent action." *Pasqua I* Am. Compl. ¶ 47. Because a
request for such a determination is not a cognizable cause of action, the County Defendants' Cross-
Motion for Summary Judgment is granted as to Count Seven and Plaintiffs Motion for Summary
Judgment regarding the same is denied.

jurisdiction." 28 U.S.C.S. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.S. § 1331. Because Plaintiffs' sole remaining claim under N.J.S.A. 40A:9-25 for a *de novo* review of the Board's decision to terminate her (Count One) is brought under a state statute, and therefore is not a claim over which I have original jurisdiction, I decline to exercise supplemental jurisdiction over that claim. In that regard, Plaintiffs' Motion for Summary Judgment and County Defendants' Cross-Motion for Summary Judgment as to Count One is denied without prejudice. Civil Action No.: 14-4203(FLW) is remanded to the Superior Court of New Jersey, Law Division, Hunterdon County.

## III.   *Pasqua II* – Motions to Dismiss

### A.  Duty of Care

In *Pasqua II*, all of the causes of action against the Accountant Defendants sound in state law tort. In particular, allegations of breach of duty of care underlie three counts in the Complaint. In Count 9, Plaintiffs accuse the Wiss and Donahue Firms of breaching their duty of care by failing to inform the County that the charges brought against Plaintiffs could not be substantiated, because the investigation performed by the County was inadequate. In Count 15, Plaintiffs allege that the Samuel Firm "violated [its] duty of care" to Plaintiffs by negligently performing its accounting work at the County. *Pasqua II Compl.* ¶ 120. In Count 16, Plaintiffs allege that the Wiss Firm breached its duty of care to Plaintiffs by failing to inform the County of the Firm's knowledge that any errors made on the County's financial records were not the result of Plaintiffs' negligence, but rather, the differences in accounting methods used by the various county auditors. In response, the Accountant Defendants argue that to the extent those claims are premised upon professional negligence in the context of accountant liability, Plaintiffs have failed to state a claim on that basis.

36

In New Jersey, liability of accountants is specifically governed by the Accountant Liability Act. That statute states in relevant part:

> b. Notwithstanding the provisions of any other law, no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless:
>
> (1) The claimant against the accountant was the accountant's client; or
>
> (2) The accountant:
>
> > (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, *who was specifically identified to the accountant in connection with a specified transaction made by the claimant*;
> >
> > (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
> >
> > (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

N.J.S.A. 2A:53A-25(b) [emphasis added].

By enacting this statute, the New Jersey Legislature has expressly limited non-client claims against accountants with the specific purpose of restoring the concept of privity to accountants' liability to third parties. *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500 (N.J. 2004). Importantly, to establish a claim of accounting negligence, a non-client, third-party claimant must allege that the accountant "'knew at the time of the engagement by the client' or thereafter agreed that [the claimant] could rely on its work." *Cast Art Industries, LLC v. KPMG LLP*, 209 N.J. 208, 227 (N.J. 2012). Indeed, the Supreme Court of New Jersey has advised that the Accountant Liability Act requires agreement, not mere awareness, on the part of the accountant to the planned use of his/her work product. *Id.* at 226. In that regard, it is important to note that "[t]here can be

no liability unless [the claimant alleges that] the accountant used words or conduct directly expressed to the claimant, which establish the accountant's understanding of the claimant's intended reliance on his work." *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 361 N.J. Super. 362 (N.J. App. Div. 2003) (holding that the plaintiffs' claims for negligence failed because they were never identified as possible claimants and the complaint did not "contain any language even suggesting that defendant provided any expression directly to plaintiffs, let alone one reflecting an understanding that they intended to rely on the audits"). Generally, "the negligent performance of audit services for a client does not give rise to third-party lability." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications International, Inc.*, 387 N.J. Super 469, 479 (N.J. App. Div. 2006).

I start with Plaintiffs' causes of action against the Samuel Firm based on negligence. I note at the outset that Plaintiffs do not identify the type of claim they intend to bring in Count 15. It appears that, essentially, Plaintiffs accuse the Samuel Firm of negligently performing its accountant work on the County's financial accounts, which, Plaintiffs argue, are the cause of any alleged discrepancies that were the bases for Plaintiffs' wrongful termination. In other words, Plaintiffs claim that the Samuel Firm should shoulder the blame for any errors or mistakes made on the County's financial records. However, Plaintiffs cannot state a claim against the Samuel Firm for negligence, because Plaintiffs —non-client third parties — have failed to allege the necessary conditions for stating such a claim under the Accountant Liability Act.

There is no dispute that the Samuel Firm was hired by the County to perform accounting work for the years 2010-2012. *See Pasqua II* Compl. ¶ 121. While Plaintiffs allege that the Samuel Firm made certain errors on the County's accounts, Plaintiffs have not adequately alleged any of the elements under the Accountant Liability Act to bring suit against the firm. Plaintiffs do not

allege that the Samuel Firm, at the time it was engaged by the County, knew or agreed that its professional accounting services would be made available to Plaintiffs. Indeed, there is no allegation that Plaintiffs were specifically identified by the County to the Samuel Firm at the time of the engagement. While Plaintiffs argue that the Samuel Firm should have been aware that Plaintiffs would be relying on the firm's services by virtue of their respective positions, as the New Jersey Supreme Court has made clear, mere allegations of awareness are not sufficient under N.J.S.A. 2A:53A-25. Rather, Plaintiffs must allege — and they have not done so — that the Samuel Firm knew that Plaintiffs intended to rely upon the firm's services and directly expressed such knowledge to Plaintiffs.

Perhaps recognizing that they have not alleged the necessary elements under the Act, Plaintiffs advance a novel argument: that they are the intended beneficiaries of the service agreement between the County and the Samuel Firm, and that this fact elevates them to "client" status. Plaintiffs then go on to cite case law discussing the elements of the third-party beneficiary test. However, Plaintiff's theory of liability is foreclosed by the express language of the Accountant Liability Act: "[N]o accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless" the conditions, set forth *supra*, are adequately alleged. Indeed, the Act specifically shields accountants from third-party suits. *See Cast Art*, 209 N.J. at 221. The cases related to third-party beneficiaries upon which Plaintiffs rely are inapposite, because they do not deal specifically with accounting liability, which is controlled by the Account Liability Act. Rather, those cases involve general contractual issues. *See, e.g., Werrman v. Aratusa, Ltd.*, 266 N.J. Super. 471, 476 (N.J. App. Div. 1993); *Broadway Maintenance Corp. v. Rutgers*, 90 N.J. 253 (N.J. 1982).

39

Moreover, Plaintiff's reliance on *Zielinski v. Prof'l Appraisal Associates*, 326 N.J. Super. 219, 223-25 (N.J. App. Div. 1999), is likewise misplaced. While *Zielinski* dealt with professional negligence, it was in the context of property appraisers. *Zielinski*, 326 N.J. Super at 221. Nowhere in that decision does the court discuss the Accountant Liability Act, or how third parties can assert claims against accounting firms under that Act. Instead, Plaintiffs argue that, in a professional malpractice setting, liability attaches based on the concept of foreseeability and fairness, as set forth in *Zielinski*. That argument myopically ignores the Accounting Liability Act and would violate the express purpose of the state legislature in enacting this statute, i.e., to abandon the broad foreseeability test in the specific context of accounting liability. *See Cast Art*, 209 N.J. at 221.

Finally, Plaintiffs, in their last ditch attempt to save their professional accounting negligence claim, argue that what the accountants and their firms knew or did not know about Plaintiffs' reliance on their work is a factual issue that should not be resolved on a Rule 12(b)(6) motion. This contention is not persuasive, because the dismissal of the professional accounting negligence claim against the Samuel Firm is based on Plaintiffs' failure to properly plead the necessary preconditions to bring suit as a third party. The Court is not evaluating the parties' evidence on these motions to dismiss; rather, I have taken everything Plaintiffs have alleged as true and found that those allegations do not suffice to state a claim. Accordingly, Count 9 of the *Pasqua II* Complaint against the Samuel Firm is dismissed without prejudice.

Plaintiffs' negligence claims against the Wiss Firm fare no better. Again, Plaintiffs acknowledge that the Wiss Firm was hired by the County to audit accounts that Plaintiffs managed. But, Plaintiffs nowhere allege that the Wiss Firm knew at any time that Plaintiffs would rely on the firm's services. In fact, Plaintiffs allege that the Wiss Firm audited the County's accounts *after* Plaintiffs were removed from their finance positions. *Pasqua II Compl.* at ¶¶ 127-28. Similar to

their claim against the Samuel Firm, Plaintiffs fail to allege any of the conditions necessary to bring a third-party suit against the Wiss Firm for professional accounting negligence. Nor can Plaintiffs claim, without any privity, that the Wiss Firm owed Plaintiffs a duty of care. Aside from their deficient pleadings in this regard, in defense of the Wiss Firm's dismissal motion, Plaintiffs raise the same arguments that the Court has already rejected in dismissing the negligence claim against the Samuel Firm; that is, Plaintiffs were the intended third-party beneficiaries of the County and the Wiss Firm's service agreement, and that Rule 12(b)(6) dismissal at this juncture is premature. These arguments are rejected for the reasons set forth, *supra*. Accordingly, Counts 9 and 16 against the Wiss Firm are dismissed without prejudice.

Finally, I address Plaintiffs' claims against the Donohue Firm. Plaintiffs allege that the Donohue Firm was hired by the County under the guise of conducting an audit. According to Plaintiffs, in Count 17, the Donohue Firm was brought in to replace Plaintiffs after they were removed from their positions and assigned elsewhere within the County, and the firm was tasked with performing Plaintiffs' work. Plaintiffs accuse the Donohue Firm of intentionally, negligently and inaccurately reporting to the County that Plaintiffs had not been performing the tasks for which they were responsible. These "false reports," Plaintiffs aver, served largely as the bases for the charges against Plaintiffs in their disciplinary proceedings. In Count 17, it appears that Plaintiffs assert two different types of claims: (1) professional negligence, and (2) tortious interference with contractual relationship.[13] I will address each in turn.

I need not belabor Plaintiff's arguments on why they have stated a professional negligence claim against the Donohue Firm, because those arguments are identical to the ones that have

---

[13] Because the Accountant Liability Act does not shield intentional acts, I will separately analyze whether Plaintiffs have properly stated a tortious interference claim.

41

already been addressed above, and rejected, by this Court. Plaintiffs raise one additional argument specifically directed to the Donohue Firm: Plaintiffs argue that the type of accounting work that the Donohue Firm was performing did not fall within the scope of the Accountant Liability Act.

Under N.J.S.A. 2A:53A-25, "Professional accounting service includes, but is not limited to, the compilation, review, certification, or audit of, or the expression of a professional opinion or other reporting on, a financial statement or other information covering a specified period of time." N.J.S.A. 2A:53A-25(a)(4). Here, relying on that definition, Plaintiffs contend that because they have alleged that the Donohue Firm was hired to perform Plaintiffs' official duties — rather than accounting or auditing — the firm was not conducting professional accounting services consistent with the Accountant Liability Act. I disagree. For one, Plaintiffs' own allegations in the Complaint belie their position.[14] On one hand, Plaintiffs allege that the Donohue Firm was hired to replace Plaintiffs, and thus, necessarily performed their accounting duties, *see Pasqua II Compl.* ¶ 133, but on the other hand, Plaintiffs aver that the Donohue Firm was commissioned by the County to opine on whether Plaintiffs had been performing their financial duties for the County properly and adequately. *Id.* at ¶¶ 134-35. While Plaintiffs suggest that the firm's unfavorable professional opinion against them was made intentionally, Plaintiffs nonetheless allege that the Donohue Firm issued a report which formed, along with other reports from the Accountant Defendants, the basis of the disciplinary charges brought against Plaintiffs. Even more telling, Plaintiffs allege in Count 18 that Mr. Tomkins, an accountant from the Donohue Firm, testified at Plaintiffs' disciplinary hearing regarding the accounts handled by Plaintiffs. Although Plaintiffs do not expressly state so, based on their allegations, the Donohue Firm had to have necessarily

---

[14]    I note that there is no dispute that the Donohue Firm was in the business of performing accounting services.

performed certain accounting services in order to have rendered a report upon which the County relied. Indeed, the definition of "professional accounting services" is not limited to audits as Plaintiffs contend. The definition is broad and expansive; it is not limited to only audits, but it covers other expressions of professional opinion on financial information. N.J.S.A. 2A:53A-25(a)(4). Thus, I do not find that Plaintiffs have alleged sufficiently that the work performed by the Donohue Firm was not related to professional accounting services as defined by the Act. Accordingly, Plaintiffs' have failed to state a professional negligence claim against the Donohue Firm.

Plaintiffs also fail to state a claim for tortious interference with contractual relationship. In order to properly allege such a claim, a plaintiff must plead the following elements: (1) that she was a party to an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; and (3) that she suffered damages resulting from the interference. *Norwood Easthill Assocs. v. Norwood Easthill Watch*, 222 N.J. Super. 378, 384 (App. Div. 1988); *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F. Supp. 1237 (D.N.J. 1994). In addition, the plaintiff must also allege that the interference was undertaken with "malice." *See Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989). The term "malice" does not require "ill will toward[s] the plaintiff, but rather 'that the harm was inflicted intentionally and without justification or excuse.'" *Matrix Essentials, Inc.*, 870 F. Supp. at 1248 (citing *Printing Mart-Morristown*, 116 N.J. at 751).

In that regard, motivation to increase financial gain cannot be a basis for malice. *See Dello Russo v. Nagel*, 358 N.J. Super. 254, 268-269 (App. Div. 2003); *EchoStar Satellite, L.L.C. v. Globe Star L.L.C.*, No. 2009 U.S. Dist. LEXIS 74136, at *11-12 (D.N.J. Aug. 20, 2009). As the New Jersey Appellate Division has explained:

> The interference is considered intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action. However, the fact that a breaching party acted *to advance [its] own interest and financial position* does not establish the necessary malice or wrongful conduct. A claim for tortious interference with the performance of a contract must be based, in part, on facts claiming that the interference was done intentionally and with "malice."

*Dello Russo*, 358 N.J. Super. at 268-69 (citations and internal quotations omitted) (emphasis added); s*ee Foxtons, Inc. v. Cirri Germain Realty*, No. A-6120-05T3, 2008 N.J. Super. Unpub. LEXIS 189, at *3-4 (App. Div. Feb. 22, 2008).

Here, there is no dispute that Plaintiffs have properly alleged the first element – that Plaintiffs had a contractual relationship with the County by virtue of their employment. However, Plaintiffs' allegations of malice fall short of the requirement. To plead malice, Plaintiffs rest on the following allegations: the Donohue Firm "deliberately, negligently and without basis in fact inaccurately reported to the defendant County and its representatives that the plaintiffs had not be [sic] performing the duties and responsibilities of their positions." *Pasqua II* Compl., ¶ 134. In that regard, Plaintiffs claim that the Donohue Firm "made false reports, or failed to make accurate reports for the purpose of solidifying [its] own engagement or employment with the County and so that [it] could continue to provide services to the County for which those defendants received." *Pasqua II* Compl., ¶ 137. Plaintiffs went on to allege that the Donohue Firm's "actions constituted tortuous [sic] interference with the present and expected economic advantage of the plaintiffs, in particular the salary, employment, and other benefits which they achieved or accrued with the County." *Id.* at ¶ 138. These allegations are equivocal as to Plaintiffs' intention. On one hand, Plaintiffs claim that the Donohue Firm negligently prepared a report that formed the basis of Plaintiffs' disciplinary charges. This clearly does not meet the malice requirement. At best, the Complaint could be read to accuse the Donohue Firm of making an inaccurate report, intentional

44

or otherwise, for the purpose of advancing the firm's own financial interests.  But, this alleged motivation does not rise to the level of malice required to plead a tortious interference claim. *Dello Russo*, 358 N.J. Super. at 268-269.  Plaintiffs must allege more than mere negligence or self-interest; rather, Plaintiffs must allege some intentional act that was done for the express purpose of depriving Plaintiffs of their expected economic gain, not simply for the firm's own financial position.[15]

Thus, Plaintiffs' claim of tortious interference against the Donohue Firm cannot be sustained as pled currently, and Count 17 is dismissed without prejudice.

### B.    "Wrongful Testimony"

In Count 18, Plaintiffs allege that during the disciplinary hearing, Mr. Tomkins of the Donohue Firm and Mr. Gannon of the Wiss Firm provided "false, misleading, inaccurate, or incomplete testimony designed to accuse the plaintiffs of failing to perform their duties or to justify that conclusion . . . ." *Pasqua II* Compl. ¶ 141. In that regard, Plaintiffs aver that "each of these defendants had a duty of care and legal obligation to provide truthful and complete testimony to the Hearing Officer and owed that duty to the plaintiffs." *Id.* at ¶ 142. However, these witnesses are entitled to immunity.

It is beyond cavil that a trial witness, in federal or state jurisdiction, "has absolute immunity with respect to *any* claim based on the witness' testimony." *Franks v. Temple Univ.*, 514 Fed.

---

[15]    Because Plaintiffs failed to properly allege malice, the Court need not address the Donohue Firm's argument that Plaintiffs cannot bring a tortious interference claim against it because the firm is an alleged agent of the County.  I note, however, that under the circumstances that Plaintiffs have alleged surrounding the Donohue Firm's involvement with the County, i.e., the firm may have created a false report, the element of malice is inextricably intertwined with the issue of agency and whether the Donohue Firm acted within the scope of its duties as an agent.

Appx. 117, 122 (3d Cir. 2013) (quoting *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505-06 (2012)) (emphasis in the original); *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (holding that trial witnesses are absolutely immune from civil liability for claims based on their testimony); *Hawkins v. Harris*, 141 N.J. 207, 214 (1995) ("A statement made in the course of a judicial . . . proceedings is absolutely privileged and wholly immune from liability."). This type of immunity extends to quasi-judicial proceedings as well. *See Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011); *Durand Equip. Co. v. Superior Carbon Prods., Inc.*, 248 N.J. Super. 581 (App. Div. 1991) ("[i]t is well-settled that a witness in a judicial or quasi-judicial proceeding enjoys an absolute immunity from civil suit for his words and actions relevant to the judicial proceedings.").

Under New Jersey law, the doctrine of absolute immunity applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 216 (quotation and citation omitted). The New Jersey Supreme Court stressed that the immunity or privilege "is not limited to statements made in a courtroom during a trial" but rather "extends to all statements or communications in connection with the judicial [or quasi-judicial] proceeding." *Id.* Whether a defendant is entitled to this privilege is a question of law. *Id.*; *Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter Protection, L.L.C.*, 64 F.Supp.2d 398, 416 (D.N.J. 1999).

Here, Plaintiffs argue that the disciplinary hearings at the heart of this case were not quasi-judicial proceedings. I do not agree. First, the hearing officer assigned to the proceedings acted in a similar manner to that of a judicial officer; he resolved evidentiary issues, heard testimony from witnesses under oath, examined documentary evidence, and in issuing his decision, the Hearing

46

Officer applied law to the facts such that he exercised judgment judicial in nature. Indeed, the New Jersey Supreme Court has advised that "[w]here an administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thus requiring the exercise of discretion or judgment judicial in nature on evidentiary facts, the function is quasi-judicial . . . ." *Pennsylvania R. Co. v. New Jersey State Aviation Com.*, 2 N.J. 64, 70 (1949); *McFeely v. Board of Pension Commissioners*, 1 N.J. 212, 215-16 (1948) ("The distinguishing characteristic in determining whether an act is judicial . . . is whether the act or function calls for the exercise of discretion or judgment judicial in nature" and "the determinative [factor] is the quality of the act rather than the character of the agency exercising the authority.") (quotations and citations omitted).

Next, contrary to Plaintiffs' contention, the New Jersey Supreme Court has not limited witness immunity to only state administrative agencies; witnesses testifying at local administrative hearings also enjoy the immunity so long as the proceedings can be deemed quasi-judicial. *Zagami, LLC v. Cottrell*, 402 N.J. Super. 98, 107 (App. Div. 2008) (rejecting plaintiff's argument that application of the litigation privilege outside the strictly judicial sphere is limited to administrative proceedings at the State level). In fact, there are ample examples of witness immunity being extended beyond the state level. *See, e.g.*, *DeStantis v. Employees Passaic County Welfare Ass'n*, 237 N.J. Super. 550 (App. Div.), *cert. denied*, 122 N.J. 164 (N.J. 1990) (extending immunity to a public hearing before a local legislative advisory commission); *Fenning v. S.G. Holdings Corp.*, 47 N.J. Super. 110 (App. Div. 1957) (extending immunity to a proceeding before a county rent control authority); *In the Matter of Hearing on Immunity for Ethics Complainants*, 96 N.J. 669 (1984) (upholding absolute immunity from libel suit under Rule 1:20-11(b) for testimony or communications given or made in connection with fee arbitration or ethics proceedings);

47

*Friedland v. Podhoretz*, 174 N.J. Super. 73, 89 (Law Div. 1980) (complaint filed with attorney ethics committee absolutely privileged in libel case); *Hill Homeowners Ass'n v. Zoning Bd. of Adj. of Passaic*, 129 N.J. Super. 170, 179 (Law Div. 1974) (pertinent statements made by objector before zoning board absolutely privileged), *aff'd*, 134 N.J. Super. 107 (App. Div. 1975).

Finally, Plaintiffs argue that the alleged false and libelous statements made by Mr. Gannon and Mr. Tomkins also took place prior to the disciplinary hearings and therefore, these witnesses are not entitled to immunity. I note that in Count 18, Plaintiffs have not identified that they are bringing separate libel claims against these two individuals. Instead, Plaintiffs' claim is based upon the statements that Mr. Gannon and Mr. Tomkins made under oath in the disciplinary hearings, and how those statements wrongfully impacted the hearings. *See Pasqua II* Compl. ¶ 142. Nonetheless, because the statements by these auditor/accountants were made in connection with, or anticipation of, a quasi-judicial proceeding, immunity also attaches. *See Pollinger v. Loigman*, 256 N.J. Super. 257 (App. Div. 1992).

Accordingly, Count 18 is dismissed.

### C.    Conspiracy

It appears that Plaintiffs are attempting to assert a conspiracy claim under 42 U.S.C.S. § 1985 and under New Jersey common law, against the Donohue and Wiss Firms in Counts 9 and 18. As set forth above, Counts 9 and 18 are not identified as causes of action based on conspiracy; rather, Count 9 is expressly alleged as a failure to conduct investigation, and Count 18 is characterized as "wrongful testimony or statements." Therefore, I do not find that Plaintiffs have properly asserted a conspiracy claim under § 1985, or otherwise in their Complaint, and they may not amend the pleadings through their brief. *See McMahon v. Salmond*, 573 Fed. Appx. 128, 135

(3d Cir. 2014). Moreover, even if Plaintiffs were bringing a conspiracy claim under § 1985, they have not alleged one sufficiently.

In order to plead a conspiracy under § 1985(3), a complaint must contain facts that plausibly allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Here, Plaintiffs have not alleged the most basic element of a § 1985 conspiracy claim – that the defendants were "motivated by a racial or class based discriminatory animus." *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Nowhere in the Complaint do Plaintiffs set forth any factual support to suggest that the Accountant Defendants, or the County Defendants, were motivated by race or class discrimination to deprive Plaintiffs of their rights under the U.S. Constitution. Plaintiffs have fallen woefully short of stating a claim in this context.

Nor have Plaintiffs stated a claim for civil conspiracy under New Jersey law. To sustain a civil conspiracy claim, Plaintiffs must allege an underlying wrong. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). In other words, if there is no valid underlying tort, a claim for civil conspiracy must be dismissed. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011) ("Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort, and because all of Plaintiffs' tort claims fail as a matter of law, Plaintiffs' civil conspiracy claim must be dismissed."). Here, because I have dismissed all underlying tort claims against the Donohue and Wiss Firms, a potential civil conspiracy claim by Plaintiffs, albeit not asserted in the Complaint, would be subject to dismissal.

49

**CONCLUSION**

In sum, Counts Two – Seven of the *Pasqua I* Complaint are dismissed, and both parties' summary judgment motions on Count One, which asserts a state claim for a *de novo* review of the Board's decision to terminate Ms. Pasqua, are denied without prejudice. I decline to exercise supplemental jurisdiction over Count One, and therefore, *Pasqua I*, Civ. Action No.: 14-4203(FLW), is remanded to the Superior Court of New Jersey, Law Division, Hunterdon County.

Regarding *Pasqua II*, all of the claims, federal or otherwise, against the Accountant Defendants have been dismissed. The remaining claims are asserted against the County Defendants and the Individual Defendants, and, based upon a reading of the *Pasqua II* Complaint, those claims are substantially similar, if not identical, to those asserted in *Pasqua I*, particularly the remaining federal claims. As such, in this Court's view, the decisions rendered in this Ominbus Opinion are also equally applicable to resolve the federal claims raised by Plaintiffs in *Pasqua II*. In that regard, Plaintiffs are directed to SHOW CAUSE in writing within 15 days from the date of the Order accompanying this Omnibus Opinion, why the decisions rendered in *Pasqua I* should not be equally applicable to resolve the federal claims in *Pasqua II*.

Date: August 11, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge

50